Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff, a major in the Army, reported for duty at Fort William McKinley, Kizal, Philippine Islands, and on January 31, 1922, was assigned quarters there for himself and wife. The plaintiff’s health was not good, and after his detail to the Philippines was under observation and treatment in the Sternberg General Hospital at Manila. On September 23,1922, less than a year after his arrival at Fort McKinley, the plaintiff received an order transferring him from the Sternberg General Hospital in Manila to the Letterman General Hospital, Presidio of San Francisco, California, for further observation and treatment. On October 11, 1922, the plaintiff, accompanied by his wife, sailed from Manila for San Francisco. Their departure vacated the quarters they had previously occupied — an obvious fact— and the post commander so certified to the finance officer at Fort Mason, San Francisco. When the plaintiff and his wife arrived in San Francisco the plaintiff entered the Letterman Hospital, and there being no available quarters for himself or wife at the fort, the plaintiff rented and paid for suitable rooms for his wife in a private residence. The plaintiff’s health continued precarious, the result being that in pursuance of a finding of an Army retiring board, he was on September 11,1923, by proper order retired from the Army on account of disability incurred in line of duty. The present suit is for the recovery of rental allowance alleged to be due an officer with a dependent wife, and is founded upon the following statutes and Army regulations, viz, the act of June 10,1922 (42 Stat. 625, 628) :
“ The rental allowance shall accrue while the officer is on field or sea duty, temporary duty away from his permanent *583 station, in hospital, on leave of absence or on sick leave, regardless of any shelter that may be furnished him for his personal use, if his dependent or dependents are not occupying public quarters during such period.”
the act of May 31, 1924 (43 Stat. 250), amending the act of June. 10,1922, supra, and reading as follows:
“ No rental allowance shall accrue to an officer, having no dependents, while he is on field or sea duty, nor while an officer with or without dependents is assigned as quarters at his permanent station the number of rooms provided by law for an officer of his rank or a less number of rooms in any particular case wherein, in the judgment of competent superior authority of the service concerned, a less number of rooms would be adequate for the occupancy of the officer and his dependents.”
The Executive order of August 13, 1924, following the act of May 31, 1924, provides as follows:
“II. Assignment of quarters. — (a) The assignment of quarters to an officer shall consist of the designation in accordance with regulations of the department concerned of quarters controlled by the Government for occupancy without charge by the officer and his dependents, if any.
“(5) Every officer permanently stationed at a post, yard, or station where public quarters are available, will be assigned thereat as quarters the number of rooms prescribed by law for an officer of his rank, or a less number of rooms determined by competent superior authority, in accordance with the regulations of the department concerned, to be adequate in the particular case for the occupancy of the officer and his dependents, if any; which regulations shall provide among other things that quarters voluntarily occupied by an officer with his dependents shall be conclusively presumed to be adequate and shall be assigned accordingly. * * *”
The pertinent War Department regulations are contained in circular 66, dated October 17, 1924, and provide as follows:
“ Termi/nation of assignments. — a. An officer’s assignment of quarters at his permanent station shall be terminated by the officer chargeable with making assignments of quarters thereat under the following conditions, and, except as provided in paragraph 3o below, under no other conditions, unless upon specific order of The Adjutant General:
*584 “(1) When the post, camp, or station ceases to be the permanent station of the officer concerned.
“ (2) When the quarters assigned to him are required for assignment to an officer superior in rank.
“(3) On his departure from his permanent station on field or sea duty, on temporary duty, to hospital for observation or treatment, on leave of absence or on sick leave, under orders which relieve him from duty at his permanent station during or at the termination of his absence, unless the officer files request to the contrary.
“(4) When orders are received for an officer absent from his permanent station on field or sea duty, on temporary duty in hospital, on leave of absence, or on sick leave, relieving him from duty at his permanent station, during or at the termination of his absence, unless the officer, or his authorized agent files request to the contrary.
“ (5) At the discretion of the commanding officer when an officer requests assignment of quarters that have been vacated or have otherwise become available subsequent to the assignment to him of his present quarters.”
The Comptroller General refused to allow the claim, resting a decision to that effect upon the fact that authority did not obtain to terminate the plaintiff’s assignment of quarters because the order sending him to the San Francisco hospital did not specifically recite that he was relieved from duty at his permanent station during or at the termination of his absence. The case of Lt. Harry A. Sanford, 6 Comp. Gen. 400, is cited.
The statute gives the allowance and manifestly regulations may not take it away. The acts of June 10, 1922, and May 31, 1924, accrue the allowance to an officer on “ duty away from his permanent station, in hospital * * * if his dependent or dependents are not carrying public quarters during such period.” The plaintiff’s situation falls precisely within the terms of the statutes, and likewise meets all the requirements of the regulations, except the positive statement relieving the plaintiff from duty at his permanent station. The plaintiff was ill and had been for some time. His illness transferred him from active duty to the hospital; no statement is made to the contrary. His physical condition continued precarious and finally in the judgment of those qualified to pass thereon, he received positive orders that transferred him from the Philippines to San Francisco, a *585 journey across the Pacific, thousands of miles away from his last detail. Eegulations may not meet every contingency; situations may develop where the effect of what takes place operates to bring the event within the regulations, though not positively expressed in the orders bringing it about. Surely an officer suffering from physical disabilities which rendered it essential to transfer him from one section of the world to another may not, as a matter of fact, be regarded as still on active duty at the former station, especially so when he is in a hospital under treatment and observation. To hold otherwise would impose upon the afflicted plaintiff the duty of coming to San Francisco and allowing his wife to remain in the Philippines alone, unable to be near him in his illness. The statute did not so intend. In addition, the quarters were vacated. The Government utilized them by another assignment, and because of the plaintiff’s physical disabilities he never thereafter returned to occupy them. The Sanford case at the most is not this case. In the Sanford case the officer returned to his permanent station following each absence in the hospital, and performed active duty. This plaintiff was honorably discharged.
The plaintiff is entitled to judgment for $1,820.00. It is so ordered.
Williams, Judge, and Littleton, Judge, did not hear and took no part in the decision of this case.
GREEN, Judge, and Graham, Judge, concur.